UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KIMBERLEY C. RANSOM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:21-CV-333 RLW |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant(s). | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on review of an adverse ruling by the Social Security Administration ("SSA"). The Court has jurisdiction over the subject matter of this action under 42 U.S.C. § 405(g). Plaintiff Kimberly Ransom filed a brief in support of her Complaint (ECF No. 20) and Defendant Kilolo Kijakazi—Acting Commissioner of the SSA—filed a brief in support of her Answer. (ECF No. 21). The Court has reviewed the parties' briefs and the entire administrative record, including transcripts and medical evidence. Based on the following, the Court finds that the Commissioner's final decision is supported by substantial evidence on the record as a whole and should be affirmed.

**I.      Background**

Plaintiff applied for disability insurance benefits and supplemental security income in May 2016. (Tr. 321-333). In both applications, Plaintiff alleged a disability onset date of February 12, 2016. (Tr. 321, 328). The SSA denied Plaintiff's claims on September 17, 2016. (Tr. 170-174). At Plaintiff's request (Tr. 175), an ALJ conducted a hearing on June 21, 2018. (Tr. 70-113). The ALJ heard testimony from Plaintiff, her son, and vocational expert Robert Bond. (Tr. 70). Following

the hearing, the ALJ issued an unfavorable decision on December 3, 2018, finding Plaintiff not disabled as that term is defined in the Social Security Act. (Tr. 146-165). The Appeals Council granted Plaintiff's request for review and remanded the case to the ALJ for further development. (Tr. 166-169). The ALJ held a second hearing on March 24, 2020, and heard testimony from Plaintiff and vocational expert Delores Gonzalez. (Tr. 33-69). In a decision dated June 30, 2020, the ALJ again found Plaintiff not disabled. (Tr. 7-27). The Appeals Council denied Plaintiff's subsequent request for review. (Tr. 1-6). This action followed. (ECF No. 1).

## II. Legal Standard

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The impairment or impairments must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. §§ 404.1520, 416.920(a)(1); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). First, the Commissioner considers the claimant's work activity. If the claimant is currently engaged in "substantial gainful activity," the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i); *McCoy*, 648 F.3d at 611.

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a severe physical or mental impairment or combination of impairments. 20 C.F.R. § 416.920(a)(4)(ii); *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 416.920(c), 416.920a(d). If the claimant does not have a severe impairment, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii); *McCoy*, 648 F.3d at 611.

Third, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. § 404.1520(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled. If not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. § 404.1520(d); *McCoy*, 648 F.3d at 611.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" (RFC) to perform his or her past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(5)(i). "RFC is defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 912 (8th Cir. 2011); *see also* 20 C.F.R. § 416.945(a)(1). While an RFC must be "based on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," it is nonetheless an administrative assessment—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016). Thus, "there is no

3

requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for providing evidence relating to his RFC, and the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work that exists in significant numbers in the national economy shifts to the Commissioner. *See Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. § 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Hensley*, 829 F.3d at 932.

### III.   The ALJ's Decision

Applying the foregoing five-step analysis, at step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since February 12, 2016. (Tr. 12). At step two, the ALJ determined that Plaintiff's severe impairments are seizure disorder, obesity, and schizophrenia spectrum disorder. (Tr. 13). The ALJ concluded that Plaintiff's anxiety and depression are non-severe impairments. *Id.* At step three, the ALJ found that Plaintiff does not have an impairment or

combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 14). The ALJ found that Plaintiff has the RFC to perform a range of light work except:

> she can only occasionally climb ramps and stairs but cannot climb ladders, ropes, and scaffolds. She can occasionally stoop, kneel, crouch, and crawl. She must avoid work at unprotected dangerous heights or around unprotected dangerous machinery, and jobs exposing her person to whole body vibration. She must avoid working alone around open flames or open bodies of water, and cannot complete jobs requiring the operation of motorized vehicles. She can complete simple and/or repetitive tasks. Finally, the claimant can have no close interaction with the public.

(Tr. 16-17). At step four, the ALJ declined to make a finding regarding Plaintiff's past relevant work. (Tr. 20). At step five, the ALJ found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." *Id.*

## IV. Standard of Review

If substantial evidence on the record as a whole supports the Commissioner's decision, the Court must affirm. 42 U.S.C. § 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoted case omitted). "[T]he threshold for such evidentiary sufficiency is not high." *Id.* Under this test, the court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016). "Although required to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence submitted." *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010) (citation omitted). An ALJ's failure to cite specific evidence does not indicate that she failed to consider such evidence. *Id*. The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those

5

determinations are supported by good reasons and substantial evidence." *Reece*, 834 F.3d at 908. Courts will not reverse an ALJ "merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 370 (8th Cir. 2016) (quotation marks and quoted case omitted). Put another way, where "the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

## V.     Discussion

Plaintiff raises two issues for the Court's consideration: (1) Whether the hypothetical posed to the vocational expert by the ALJ at the March 2020 hearing adequately reflected Plaintiff's ability to concentrate, persist, and maintain pace; (ECF No. 20 at 3) and (2) Whether the ALJ erred by failing to ask about, identify, ask about, and resolve conflicts between the vocational expert's testimony and the U.S. Department of Labor's *Dictionary of Occupational Titles* ("DOT"). *Id.* at 6.  Simply put, the Court must determine whether the ALJ's determinations at steps four and five are supported by substantial evidence. *See* 42 U.S.C. § 1383(c)(3).

### A.     **The ALJ's RFC determination adequately reflects Plaintiff's moderate limitation in the area of concentration, persistence, and maintaining pace.**

Plaintiff argues that the ALJ erred by posing hypotheticals to the vocational expert that did not adequately account for Plaintiff's moderate limitation in the functioning area of concentration, persistence, and pace. (ECF No. 20 at 3-6). More specifically, Plaintiff contends that the phrases "simple and/or repetitive tasks" and "no close interaction with the public" do not accurately reflect the extent of her limitations. *Id.* Defendant disagrees, arguing that the ALJ properly included only those limitations that were supported by the record. (ECF No. 21 at 4-7).

6

As explained above, at step three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled. If not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. § 404.1520(d); *McCoy*, 648 F.3d at 611.

Section 12.00 of 20 C.F.R. Part 404, Subpart P, Appendix 1, governs the analysis of mental disorders in disability determinations. Listing 12.03 contains three paragraphs relating specifically to schizophrenia spectrum and other psychotic disorders. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.03. A claimant's impairment meets or equals Listing 12.03 if the impairment satisfies both Paragraph A and B or Paragraphs A and C. *Id.*

The ALJ looked to Paragraph B to determine whether Plaintiff has an "extreme limitation of one, or a marked limitation of two" of the four listed areas of mental functioning. (Tr. 14).[1] Paragraph B provides:

> B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):
> 1. Understand, remember, or apply information (see 12.00E1).
> 2. Interact with others (see 12.00E2).
> 3. Concentrate, persist, or maintain pace (see 12.00E3).
> 4. Adapt or manage oneself (see 12.00E4).

20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.03B

The ALJ found no extreme or marked limitations in any of the four mental functioning areas. (Tr. 14-15). Most relevant to this review, the ALJ found that Plaintiff has only a moderate limitation in the area of concentration, persistence, and maintaining pace. (Tr. 15). In reaching this

---

[1] Plaintiff does not challenge the ALJ's conclusions as to Paragraphs A and C.

7

conclusion, the ALJ noted that Plaintiff wakes up at 6:00 a.m., gets breakfast, uses the internet to search for jobs, submits job applications, and helps with her sister's daycare. *Id.* The ALJ also noted that Plaintiff can complete simple mathematical problems and perform serial three subtraction, albeit slowly. *Id.*

The ALJ gave great weight to the opinion of Barbara Markway, Ph.D., who completed the psychological portion of the August 2016 Disability Determination Explanation. (Tr. 16, 114-218). Dr. Markway reviewed Plaintiff's medical records and concluded that Plaintiff experienced moderate difficulties in concentration, persistence, and pace. *Id.* Dr. Markway opined that although Plaintiff "cannot perform her past work, she is capable of other work less demanding." (Tr. 119). Dr. Markway explained that Plaintiff was of "questionable reliability" and had "not had any medical or psychiatric treatment for at least 7 years." (Tr. 120). While acknowledging that Plaintiff's failure to seek treatment could be due to Plaintiff's paranoia, Dr. Markway noted that Plaintiff "is none the less [sic] able to go to the library and reports she is actively seeking employment." *Id.* The ALJ found Dr. Markway's conclusions consistent with the medical record as a whole. (Tr. 16).

The ALJ gave some weight to the opinion of Karen Hampton, Ph.D., a consultative psychological evaluator who was able to personally examine Plaintiff but did not review Plaintiff's medical records. *Id.* Like Dr. Markway, Dr. Hampton concluded that Plaintiff was moderately limited in concentration, persistence, and pace. (Tr. 525).

As to the testimony of Plaintiff's son, Greg Robinson, the ALJ found it subjective in nature and declined to assign it any weight. (Tr. 16). The ALJ nevertheless considered Mr. Robinson's testimony in conjunction with the balance of the evidence. *Id.*

8

Having determined that Plaintiff's impairment or combination of impairments did not equal the criteria of Listing 12.03, the ALJ turned to Plaintiff's RFC. (Tr. 16-17). In determining Plaintiff's RFC, the ALJ considered "the claimant's statements concerning the intensity, persistence, and limiting effects" of her physical and mental symptoms but found them "not entirely consistent with the medical evidence and other evidence in the record[.]" (Tr. 17). The ALJ again highlighted that Plaintiff wakes up at 6:00 a.m., gets breakfast, cleans up, uses the internet to search for employment, and assists with her sister's daycare. *Id.* The ALJ further explained that Plaintiff attends church, goes to social events with her kids, walks to the bus stop, goes to the library, cleans, launders and irons clothing, mows the lawn, sweeps, shops, rides a bicycle, and uses public transportation. (Tr. 18).

In light of this evidence, the ALJ concluded that Plaintiff "can complete simple and/or repetitive tasks given her moderate limitation in concentrating, persisting, and maintaining pace" but should have "no close interaction with the public due to her moderate limitation in interacting with others." (Tr. 19). The ALJ incorporated these limitations into a hypothetical at the March 2020 hearing:

> So I'd like you to assume a hypothetical individual of Ms. Ransom's age, education and work experience and assume that person could lift 20 pounds on occasion and 10 pounds frequently, could stand and/or walk about six out of eight hours and sit about six and assume that the person could occasionally climb ramps and stairs but never climb ladders, ropes or scaffolds or stoop, kneel or could occasionally stoop, kneel, crouch and crawl, should avoid working at unprotected dangerous height, around unprotected dangerous machinery, should avoid jobs that expose a person to whole body vibration like operating heavy equipment either off road or on road . . . and the person should avoid working alone around open water or open flames . . . . the person would be limited to simple, and/or repetitive work with no close interaction with the public like not customer service jobs or retails sales, things of that nature.

9

(Tr. 61-62). The vocational expert opined that such an individual could work as a housekeeping cleaner, photocopy machine operator, or price marker. (Tr. 63).

To constitute substantial evidence, a vocational expert's testimony must be based on a hypothetical that captures the "concrete consequences" of the claimant's deficiencies. *Scott v. Berryhill*, 855 F.3d 853, 857 (8th Cir. 2017) (citing *Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006)). A hypothetical need not use specific diagnostic terms, (*Lacroix*, 465 F.3d at 889), but must include the effects of any concentration, persistence, and pace deficiencies that the ALJ has found. *Newton v. Chater*, 92 F.3d 688, 695 (8th Cir. 1996). That said, a sufficient hypothetical need not contain much more than the hypothetical at issue in *Newton*, which the Court addresses below. *See Brachtel v. Apfel*, 132 F.3d 417, 421 (8th Cir. 1997).

There is no dispute that Plaintiff has moderate limitations in the area of concentration, persistence, and pace. The issue is whether the ALJ's hypothetical, and related RFC determination, adequately addressed these limitations. The Court concludes, on this record, that the ALJ's hypothetical was adequate and the RFC is supported by substantial evidence.

The Eighth Circuit's decision in *Rhinehart v. Saul* supports a finding in Defendant's favor. 776 F. App'x 915 (8th Cir. 2019). There, the claimant tried to establish marked limitations in his ability to interact with others, concentrate, persist, and maintain pace. *Id.* at 915. At the claimant's hearing, the ALJ posed a hypothetical to the vocational expert to determine whether jobs existed in the national economy for an individual that could perform only "simple, routine, [and] repetitive tasks" that require minimal training. *Id.* at 916. After considering all the evidence, the ALJ found that the claimant was only mildly limited in his ability to interact with others and moderately limited in his ability to concentrate, persist, and maintain pace. *Id.* The claimant appealed, arguing

that the ALJ's hypothetical did not accurately capture his limitations. *Id.* at 915. The Eighth Circuit disagreed and affirmed the ALJ's determination:

> To be sure, the psychologist also said that Rhinehart is easily distracted and would not be able to work without supervision. But the ALJ rejected those aspects of the psychologist's opinion based on other evidence in the record, including Rhinehart's testimony about the daily activities he performs—like shopping, preparing simple meals, and fishing—without ongoing supervision. It is the ALJ's responsibility to weigh conflicting evidence, *see Fentress v. Berryhill*, 854 F.3d 1016, 1021 (8th Cir. 2017), not ours.

*Id.* at 916.

The Eighth Circuit's decision in *Scott v. Berryhill* also supports a finding for Defendant. 855 F.3d 853 (8th Cir. 2017) In that case, the ALJ determined that the claimant had moderate deficiencies in concentration, persistence, and pace. *Id.* at 855. The ALJ noted that the claimant was able to watch television for three hours per day. *Id.* And although the claimant worked slowly, he maintained good concentration and persistence during consultative examinations. *Id.* As a result, the ALJ concluded that the claimant was limited to tasks that required only brief, simple, and direct instructions and could be performed by rote. *Id.* The claimant appealed the ALJ's RFC determination, arguing that the RFC hypothetical used at the hearing failed to capture claimant's true limitations. *Id.* at 857-58. On *de novo* review, the Eighth Circuit upheld the ALJ's determination. *Id.*

Here, the ALJ found that Plaintiff has a moderate limitation in the area of concentration, persistence, and maintaining pace. (Tr. 15). The ALJ expressly stated that Plaintiff is limited to "simple and/or repetitive tasks" as a result. (Tr. 19). Even though there is evidence in the record to suggest that Plaintiff's limitations could be more severe, it is not this Court's responsibility to weigh conflicting evidence. *Rhinehart v. Saul*, 776 F. App'x at 916. In evaluating the vocational

expert's testimony, the ALJ was entitled to rely on his own findings, not those that Plaintiff wishes he would have made. *Id.*

Plaintiff cites a single Eighth Circuit case pertaining to the adequacy of an ALJ's hypothetical as it relates to concentration, persistence, and pace. (ECF No. 20 at 3). In *Newton v. Chater*, the Eighth Circuit considered whether the ALJ's hypothetical adequately accounted for the claimant's undisputed mental limitations in concentration, persistence, and pace. 92 F.3d 688, 695 (8th Cir. 1996). There, the ALJ's hypothetical described a person with a minimal ability to read and write, a borderline range of intelligence, a ninth or tenth grade education, an inability to perform highly skilled or technical work, a capacity for simple jobs, and a demonstrated ability to control his drinking problem. *Id.* at 694. The record in *Newton* contained medical opinions that the claimant struggled to "maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, complete a normal work week, and perform at a consistent pace without an unreasonable number and length of rest periods." *Id.* at 695. Against this backdrop, the Eighth Circuit held that the ALJ's hypothetical did not adequately account for the claimant's deficiencies in concentration, persistence, or pace. *Id.* at 695.

Here, the evidence relating to concentration, persistence, and pace is substantially less conclusive. While Plaintiff's psychological evaluations generally refer to a moderate impairment, they offer no explicit findings as to Plaintiff's ability to perform within a schedule, maintain regular attendance, be punctual, complete a normal work week, or perform at a consistent pace. (Tr. 114-128, 520-606). Indeed, as to pace, Dr. Hampton concluded that plaintiff was only "mildly slow on cognitive tasks compared to other similar-age adults." (Tr. 116, 525). While an RFC hypothetical must capture the "concrete consequences" of a claimant's deficiencies, *Scott*, 855 F.3d at 857,

12

Plaintiff offers no authority to suggest that the ALJ must also include consequences he finds unsupported by the record.

Plaintiff cites two district court cases that are similarly distinguishable. (ECF No. 20 at 4) (citing *Logan-Wilson v. Colvin*, No. 4:13-CV-1119-JAR, 2014 WL 4681459, at *1 (E.D. Mo. Sept. 19, 2014) (ALJ did not properly account for pace deficits in the RFC finding); *Cain v. Colvin*, No. 4:14-CV-772-DDN, 2015 WL 2092411, at *1 (E.D. Mo. May 5, 2015) (social restrictions and limits to simple and repetitive jobs not sufficient to reflect claimant's true limitations)). Both cases precede *Rhinehart* and *Scott*. Even if Plaintiff's cases were controlling and less distinguishable, the precedent in this area still supports a finding in Defendant's favor. *See e.g., Faint v. Colvin*, 26 F. Supp. 3d 896, 911-12 (E.D. Mo. 2014) (RFC limitations to simple, unskilled work sufficiently captured the plaintiff's moderate limitations in concentration, persistence, or pace); *Salkic v. Saul*, No. 4:18-CV-1901 HEA, 2020 WL 805868, at *3 (E.D. Mo. Feb. 18, 2020) (limitations to "simple routine tasks" adequately captured the plaintiff's moderate limitations in concentration and attention); *Gonzalez v. Saul*, No. 4:19-CV-1429 SNLJ, 2020 WL 1873410, at *3-4 (E.D. Mo. Apr. 15, 2020) (limitation to "simple and routine tasks" accounted for the plaintiff's limitation to "no more than moderate" limitations in concentration, persistence, and pace); *Goudeau v. Saul*, 2020 WL 7023936, at *5 (E.D. Mo. Nov. 30, 2020) (claimant's moderate limitation in the area of concentration, persistence, or pace was "adequately reflected in the RFC limitation to repetitive tasks and exclusion of work involving an assembly line or conveyor belt."); *King v. Berryhill*, No. 1:18-CV-23 NCC, 2019 WL 1200334, at *5-6 (E.D. Mo. Mar. 14, 2019) (RFC limitation to "unskilled, simple, routine work" appropriately accommodated the plaintiff's moderate limitations in concentration and attention); *Boyd v. Colvin*, No. 4:15-CV-823 NAB, 2016 WL 3257779, at *5 (E.D. Mo. June 14, 2016) (RFC limitation to "simple, routine work consistent with 'unskilled'

work" adequately accounted for the plaintiff's moderate limitations in concentration, persistence, and pace); *Fleming v. Colvin*, No. 4:15-CV-1150 SPM, 2016 WL 4493683, at *8 (E.D. Mo. Aug. 26, 2016) (RFC addressed the plaintiff's concentration deficit by limiting the plaintiff to "simple, repetitive tasks," "only occasional interaction with supervisors, co-workers and the public," and work "which does not require close attention to detail.").

Based on the foregoing, the Court finds that the hypothetical posed to the vocational expert at Plaintiff's March 2020 hearing adequately accounted for Plaintiff's limitations in the area of concentration, persistence, and maintaining pace. Thus, the ALJ's reliance on the vocational expert's testimony was appropriate and substantial evidence supports the determination at step five that there are jobs in the national economy that Plaintiff can perform. S*ee Scott*, 855 F.3d at 857.

> **B.     The ALJ did not err by failing to ask the vocational expert about potential conflicts between the vocational expert's testimony and information contained in the DOT.**

Plaintiff next argues that the testimony of the vocational expert conflicted with the DOT and that the ALJ erred in failing to ask about and resolve the apparent conflicts. (ECF No. 20 at 6-13). Defendant counters that the ALJ considered whether there were conflicts and appropriately determined there were none. (ECF No. 21 at 7-9). In her reply, Plaintiff seemingly concedes that there were no conflicts but argues that the ALJ still had an affirmative duty to ask the vocational expert about possible conflicts. (ECF No. 22 at 4) ("The lack of even asking whether there was a conflict is the issue.").

Social Security Ruling 00-4p ("SSR 00-4p") clarifies the role of the ALJ in resolving apparent conflicts between the testimony of a vocational expert and the DOT. It states:

> When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is

14

> disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency. . . . [T]he adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT.

SSR 00-4p.

The parties agree that if a vocational expert's testimony conflicts with the information in the DOT, the ALJ must identify the conflict and resolve it. The parties disagree, however, as to whether the ALJ must explicitly ask the vocational expert whether her testimony conflicts with the DOT in the first place. Plaintiff argues that the ALJ must make such an inquiry even if a conflict is not apparent. (ECF No. 22 at 3-4). Defendant contends that the ALJ's duty is triggered only if an apparent conflict arises. (ECF No. 21 at 7-8).

Courts around the country have taken varying approaches to this question. In *Donahue v. Barnhart*, the Seventh Circuit seems to suggest that SSR 00-4p imposes an affirmative duty on the ALJ to ask the vocational expert if her testimony is consistent with DOT, whether a conflict is apparent or not. 279 F.3d 441, 446 (7th Cir. 2002). The Seventh Circuit later determined in *Overman v. Astrue* that the ALJ need only investigate and resolve "*apparent* conflicts between the vocational expert's evidence and the DOT." 546 F.3d 456, 463 (7th Cir. 2008) (emphasis original). In *Martin v. Comm'r of Soc. Sec.*, the Sixth Circuit concluded that SSR 00-4p "does not address what to do when a conflict is not apparent." 170 F. App'x 369, 374 (6th Cir. 2006). The Third Circuit in *Burns v. Barnhart* stated: "Social Security Ruling 00–4p requires that the ALJ ask the vocational expert whether any possible conflict exists between the vocational expert's testimony and the DOT, and that, if the testimony does appear to conflict with the DOT, to 'elicit a reasonable explanation for the apparent conflict.'" 12 F.3d 113, 127 (3d Cir. 2002).

15

The Eight Circuit has yet to explicitly address this particular provision of SSR 00-4p. Nevertheless, the Eighth Circuit's decision in *Courtney v. Comm'r, Soc. Sec. Admin.* is instructive. 894 F.3d 1000 (8th Cir. 2018). In *Courtney*, the Eighth Circuit made clear that that SSR 00-4p does not place "an affirmative responsibility on the ALJ to inquire further when the [vocational expert] merely testifies to information that is not included in the DOT, but that does not conflict with it." *Courtney*, 894 F.3d 1000, 1003 (8th Cir. 2018). It is unclear whether the Eighth Circuit's use of the phrase "inquire further" applies to the ALJ's duty to ask the vocational expert whether conflicts exist in the first place, or if the phrase applies only to the ALJ's duty to "elicit a reasonable explanation" for a conflict that becomes apparent *after* asking the vocational expert about possible conflicts. Regardless, is it clear that

> when an ALJ has posed a hypothetical that accurately reflects his RFC finding, questioned the VE about any apparent inconsistencies with the relevant DOT job descriptions, and explained his decision to credit the VE's testimony, the ALJ has complied with SSR 00-4p, and we review his decision under the deferential substantial evidence standard.

*Courtney*, 894 F.3d at 1004 (cleaned up).

Here, as established above, the ALJ posed a hypothetical that accurately reflected the ALJ's RFC determination. Further, the ALJ explained why he relied upon the vocational expert's testimony:

> Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the DOT. Although the vocational expert testified regarding information not directly addressed in the DOT, such as absenteeism, such information was presumably based upon her profession [sic] experience (28E), and thus her testimony is found to be convincing.

(Tr. 20-21). While the ALJ did not ask the vocational expert about any apparent inconsistencies, it seems there were no "apparent" inconsistencies to investigate. The ALJ expressly found that the

16

vocational expert's testimony was "consistent with the information contained in the DOT." *Id.* Plaintiff offers no evidence to refute that finding. The fact that the vocational expert testified to information outside of the DOT alone does not establish a conflict. *See Courtney*, 894 F.3d at 1004. Under this standard, the Court finds that the ALJ appropriately relied upon the testimony of the vocational expert.[2]

Even if the ALJ erred in failing to inquire about possible conflicts, the error was harmless because there appears to be no conflict between the vocational expert's testimony and the DOT. *See Renfrow v. Astrue,* 496 F.3d 918, 921 (8th Cir. 2007) ("In sum, the ALJ's error in failing to ask the vocational expert about possible conflicts between his testimony and the [DOT] was harmless, since no such conflict appears to exist."); *see also Coates v. Colvin,* No. 14-0843-CV-W-ODS, 2015 WL 4610991, at *2 (W.D. Mo. July 30, 2015) ("While the ALJ erred, the error requires reversal only if the Court concludes the error was not harmless."). Absent a showing of prejudice, the Court will not reverse and remand the decision of an ALJ for failure to fully and fairly develop the record. *See Onstad v. Shalala,* 999 F.2d 1232, 1234 (8th Cir. 1993) (citing *Phelan v. Bowen*, 846 F.2d 478, 481 (8th Cir.1988)); *see also Graves v. Colvin,* 837 F.3d 589, 592 (5th Cir. 2016) (finding that the ALJ erred by failing to ask about any possible conflict but declining to remand where the claimant failed to show she was prejudiced by the ALJ's failure).

---

[2] Plaintiff relies on three Eighth Circuit cases to support her position that the ALJ erred by failing to identify, ask about, and resolve apparent conflicts. (ECF No. 20 at 8-11) (citing *Moore v. Colvin*, 796 F.3d 987 (8th Cir. 2014); *Kemp v. Colvin*, 743 F.3d 630 (8th Cir. 2014); *Welsh v. Colvin*, 765 F.3d 926 (8th Cir. 2014)). Those cases are distinguishable, however, because each involved direct conflicts between the vocational expert's testimony and information contained in the DOT. What is more, *Welsh* supports this Court's determination that the ALJ's failure to explicitly ask the vocational expert about conflicts does not warrant remand. *Welsh*, 765 F.3d at 930.

## VI. Conclusion

Based on the foregoing, the Court finds that the ALJ's decision was based on substantial evidence in the record as a whole and should be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**. A separate judgment will accompany this Memorandum and Order.

*Ronnie L. White*
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

Dated this 30th day of September, 2022.